**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **BRYAN JOSE CORTEZ FIGUEROA** | **CIVIL ACTION NO. 26-0111** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **BRIAN ACUNA, ET AL.** | **MAG. JUDGE CAROL B. WHITEHURST** |

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner Bryan Jose Cortez Figueroa,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2]  For reasons that follow, the Court should deny this petition.

<u>**Background**</u>

Petitioner is a citizen of Honduras.  [doc. # 1, p. 1].  He entered the United States of America on approximately May 3, 2013, "at or around McAllen, Texas at the age of 12 through the use of a middleman commonly referred to as a 'coyote.'"  *Id.* at 2.  "The coyote made misrepresentations to immigration officials stating that

---

[1] Petitioner's "A Number" is 201-803-231.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

the petitioner was his son.  As such immigration officials presented the petitioner with immigration documents and a I-862 Notice To Appear with the incorrect information on the document.  As the petitioner was a minor at the time of his arrival he did not fully understand the situation nor the documents that he was presented with." *Id.* at 5.  DHS released Petitioner on an unknown date.  [doc. # 1, p. 18].

In 2019, "[a]fter being in the United States for some time, he applied for Special Immigrant Juvenile status . . . ." [doc. #s 1, pp. 2, 4; 1-2, p. 1].  On March 10, 2020, DHS granted his application and granted him deferred action.  [doc. # 1-2].

Petitioner states: "[His] approval was for Special Immigrant Juvenile Status with Deferred Action.  Mr. Cortez Figueroa's priority date was in 2019 allowing him to apply for an adjustment of status immediately." [doc. # 1, pp. 1-2].  "Petitioner was preparing to apply for Lawful Permanent Residency based on his SIJS." *Id.* at 6.  On January 3, 2026, Petitioner was taken into immigration custody.  [doc. #s 1, p. 4; 7, p. 2].

"On January 5, 2026, ICE sent Petitioner a termination notice, noting its intent to revoke his deferred action-based employment authorization fifteen days from the date of the notice. Exhibit 4 – Termination Notice.  Pursuant to the termination notice, Petitioner's deferred status has been revoked." [doc. #s 7, p. 2; 7-4].

Petitioner filed this proceeding on January 13, 2026.  He first claims: "The mandatory detention provisions at 8 U.S.C. § 1225(b)(2) does [sic] not apply to noncitizens residing in the United States.  The application of § 1225(b)(2) to bar Petitioner from receiving a bond redetermination hearing before an immigration judge violates the Immigration and Nationality Act."  [doc. # 1, p. 17].

Next, Petitioner claims that his "continued detention constitutes a violation of due process."  [doc. # 1, p. 17].  He argues, "Whereas here, the government has released the Petitioner pursuant to 8 U.S.C. § 1226(a) to apply for asylum, Respondents cannot simply re-arrest and re-detain petitioner for no reason at all." *Id.*  According to Petitioner, "the Due Process Clause requires that any deprivation of Petitioner's liberty be narrowly tailored to serve a compelling government interest. . . . Petitioner's ongoing imprisonment without hope of a bond hearing does not satisfy that rigorous standard . . . . Petitioner's long presence in the United States without a significant criminal history hardly justifies indefinite detention and denial of his right to a bond hearing under § 1226(a)."  *Id.* at 18.

Respondents opposed the petition on March 4, 2026.  [doc. # 7].  Petitioner filed a reply on March 11, 2026.  [doc. # 8].

## Law and Analysis

### I. 8 U.S.C. § 1225 Vs. 8 U.S.C. § 1226

On February 6, 2026, the Fifth Circuit Court of Appeals held that aliens who have not been admitted may be detained without bond hearings under 8 U.S.C. § 1225(b)(2)(A) even when they have been present in the United States for many years. *Buenrostro-Mendez*, 166 F. 4th at 502. In reaching its conclusion, the court analyzed the meaning of "seeking admission" and "applicants for admission" in 8 U.S.C. § 1225. *Id.* The court concluded that "applicants for admission," which includes all aliens who have not previously been admitted to the United States, are necessarily "seeking admission" and, therefore, subject to mandatory detention under § 1225(b)(2)(A). *Id.*

Here, *Buenrostro-Mendez* governs Petitioner's detention status: he is detained under Section 1225. Under 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added), "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien *shall be detained* for further consideration of the application for asylum." Plainly, Section 1225 does not authorize release on bond. *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).

Petitioner filed his petition before *Buenrostro-Mendez* issued. In his reply, however, he attempts to distinguish *Buenrostro-Mendez*. [doc. # 8]. He first argues: "This case does not concern initial detention at the border. Rather, it concerns

detention after the Government affirmatively exercised its discretion to allow Petitioner to reside in the community for years and imposed no finding that he posed a flight risk or danger." *Id.* at 3. Instead of arguing that he is statutorily entitled to bond under Section 1226, however, he conflates the statutory question addressed in *Buenrostro-Mendez* with a constitutional question and concludes, "Where the Government seeks to revoke an existing liberty interest (rather than withhold liberty in the first instance) due process demands heightened procedural protections."

Petitioner next highlights that "SIJS youth are 'deemed . . . to have been paroled into the United States' for the purposes of adjustment of status. 8 U.S.C. § 1255(h)(1)." He then cites *Moreno Madrid v. Acuna*, 3:25-cv-01572 (W.D. La. Dec. 15, 2025), for support, arguing that this Court "has previously found that when an individual is admitted or paroled into the country under forms such as a I-220A Release on Recognizance that they should be held under 8 U.S.C. § 1226(a) not § 1225 (b)(2)." However, the District Judge in *Moreno Madrid* rendered judgment before *Buenrostro-Mendez* issued.

Next, Petitioner argues: "Since Mr. Cortez Figueroa was granted SIJS he has not been accruing illegal presence in the United States. This fact alone is materially different from the noncitizens in Buenrostro." [doc. # 8, p. 4]. Again, however, instead of arguing that he is not detained under Section 1225, he conflates the statutory issue with a constitutional question and concludes, "Although a grant of

5

SIJS does not constitute a formal 'admission' under the Immigration and Nationality Act, the Government's discretionary decision to release Petitioner from custody and permit him to live freely within the United States created a substantial liberty interest protected by the Due Process Clause." *Buenrostro-Mendez* did not address a due process claim.

Finally, Petitioner suggests that his case is distinguishable from *Buenrostro-Mendez* because unlike the petitioners there, he was released on parole and was not "accruing illegal presence" in the United States. *Buenrostro-Mendez*, however, did not turn on whether the petitioners were "accruing illegal presence"; rather, it turned on whether the petitioners were "applicants for admission" and "seeking admission." *Buenrostro-Mendez*, 166 F.4th at 502. And Petitioner does not adequately distinguish his case from *Buenrostro-Mendez* as to whether he is or is not an applicant for admission and seeking admission.[3] *See generally* 8 U.S.C. §

---

[3] *See Firatli v. Patterson*, 2026 WL 561103, at *2 (W.D. La. Feb. 27, 2026) (Summerhays, J.) ("Petitioner argues that he was originally paroled and that this fact precludes mandatory detention. Petitioner is correct that the petitioners in *Buenrostro-Mendez* apparently had not been paroled. However, nothing in the statutory language of § 1225(b)(2) or the Fifth Circuit's interpretation of that provision makes a distinction for applicants who, at some point, had been granted parole. Here, while Petitioner was originally granted parole, that parole was subsequently revoked. Petitioner was then detained pending a decision on his asylum application. As previously explained, Petitioner is an 'applicant for admission' and satisfies the requirements for mandatory detention under § 1225(b)(2) as construed in *Buenrostro-Mendez*."); *Moreira v. Martinez*, 2026 WL 1419153, at *1 (S.D. Tex. May 20, 2026) ("Petitioner argues that because he was detained and released upon his entry into the United States, he cannot be detained under §

1182(b)(5)(A) ("The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien

---

1225(b)(2). However, as the Fifth Circuit explained in Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), an alien who is present without lawfully being admitted to the United States is an applicant for admission and is therefore subject to mandatory detention under § 1225(b)(2)."); *but see Panameno Lopez v. Moniz*, 2026 WL 515681, at *2 (D. Mass. Feb. 25, 2026) ("Moreover, the government has not treated petitioner as an 'applicant for admission . . . seeking admission' into the United States. . . . He was released at the border and Citizenship and Immigration Services granted him Special Immigrant Juvenile status. Special Immigrant Juvenile status 'converted [the petitioner] from being an arriving alien to an alien present in the United States'). The government cannot turn back time and do so now. Thus, because the government has not proffered an alternative authority for detention, to the extent that the government has such lawful authority, it must be under § 1226(a).") (citations omitted); *Jimenez Vera v. Blanche*, 2026 WL 1430908, at *4 (D. Nev. May 21, 2026) ("Jimenez Vera is not actively seeking to lawfully cross into the territorial limits of the United States because he has already entered the United States in 2023 and was thereafter released."); *Gill v. Noem*, 2026 WL 686134, at *2 (W.D. Wash. Mar. 11, 2026) ("It is undisputed that Petitioner was released on his own recognizance and living in the United States before he was re-detained at NWIPC. This casts considerable doubt on Respondents' argument that this Petitioner is currently an 'applicant for admission' subject to mandatory detention under § 1225(b)."); *Betancourth v. Tate*, 2026 WL 638482, at *2 (S.D. Tex. Mar. 6, 2026) ("[T]here are factual differences between Betancourth's circumstances and those of the *Buenrostro* petitioners, namely, the fact that Betancourth was previously apprehended and released pursuant to § 1226(a), whereas the petitioners in *Buenrostro* were detained pursuant to § 1225(b)(2) in the first instance. It is not clear how this prior release interacts with the Fifth Circuit's interpretation of the relevant statutes in *Buenrostro*.").

applying for admission to the United States, *but such parole of such alien shall not be regarded as an admission of the alien . . . .*") (emphasis added).

Petitioner does not sufficiently distinguish his case from *Buenrostro-Mendez* and does not, therefore adequately persuade the undersigned that he is detained under Section 1226. Petitioner is not, therefore, statutorily entitled to bond or a bond hearing. The Court should dismiss his statutory claim accordingly.

## II.  Due Process

Petitioner claims, "Whereas here, the government has released the Petitioner pursuant to 8 U.S.C. § 1226 (a) to apply for asylum, Respondents cannot simply re-arrest and re-detain petitioner for no reason at all." [doc. # 1, p. 17]. According to Petitioner, "the Due Process Clause requires that any deprivation of Petitioner's liberty be narrowly tailored to serve a compelling government interest. . . . Petitioner's ongoing imprisonment without hope of a bond hearing does not satisfy that rigorous standard . . . . Petitioner's long presence in the United States without a significant criminal history hardly justifies indefinite detention and denial of his right to a bond hearing under § 1226(a)." *Id.* at 18.

In *Dzheison Ford v. Timothy Ducote, et al.*, 3:20-cv-1170, Doc. 19, (W.D. La. Nov. 2, 2020), the district judge opined in pertinent part:

> In *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020), a Sri Lankan national was stopped 25 yards after crossing the southern border of the United States. He was detained for expedited removal. An asylum officer rejected his credible fear

claim.  Thuraissigiam then filed a federal habeas corpus petition in which he, for the first time, asserted a fear of persecution and requested a new opportunity to apply for asylum.  In reversing the appellate court, the Supreme Court found the detention did not violate the Due Process Clause.  Although not a case of unreasonable detention, the case is important as to Due Process rights for illegal aliens.  Citing *Nishimare Ekin v. United States*, 142 U.S. 651, 660 (1892), the Court held that with regard to foreigners who have never been naturalized or acquired any domicile or residence in the United States, "'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'"  140 S. Ct. at 1977.

In *Demore v. Kim*, 538 U.S. 510 (2003), Kim had entered the United States lawfully and had resided in this country for over 10 years before committing a crime, which made him deportable. Like Ford, Kim argued his mandatory detention violated due process when no determination had been made whether he posed a danger to society or a flight risk. Also, like Ford, Kim asked for an individualized bond hearing which was not authorized under the statute.  Both the District Court and the Court of Appeals for the Ninth Circuit found the detention without a bond hearing violated Kim's due process rights. In reversing the District Court and Ninth Circuit, the Supreme Court held detention during these proceedings did not violate Kim's due process rights.

Also, like Ford, Kim relied on the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001).  In *Zadvydas*, two aliens were held pending removal after final order of deportation.  However, no country would take them, so their detention continued for years beyond the 90–day removal period of 8 U.S.C. §1231(a).  The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." *Id*. at 699. The Supreme Court concluded that six months was a presumptively reasonable period of detention, beyond the removal period, to remove aliens ordered deported.  *Id*. at 702.

The *Kim* Court held that *Zadvydas* was materially different because the detention of the aliens in *Zadvydas* was "indefinite" and "potentially permanent." Therefore, the correct standard to apply is

9

> to determine whether Ford's detention is "indefinite" or "potentially permanent."
>
> Ford's detention is not "indefinite" or "potentially permanent." Ford's detention ends when the removal proceedings end. Ford's focus on "unreasonable detention" is incorrect. As long as Ford's detention is not "indefinite" nor "potentially permanent," Ford's due process rights are not violated. See also *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).

Here, Petitioner is not constitutionally entitled to a bond hearing. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process.").[4]   As in *Ford*, Petitioner's detention is not indefinite or potentially permanent.  He was re-detained on January 3, 2026, and he has a hearing scheduled for June 15, 2026.[5]   Accordingly, the Court should deny Petitioner's claim.

## III. Procedural Due Process

Citing *Mathews v Eldridge*, 424 U.S. 319, 335 (1976), Petitioner appears to claim  that absent a bond hearing, Respondents are violating his right to procedural due process.  [doc. #s 1, p. 13; 8, p. 4].

Preliminarily, the undersigned highlights that the two issues—procedural due process and the statutory interpretation of Sections 1225 and 1226 as addressed

---

[4] *See also Romero v. Tate*, 2026 WL 1067566, at *1 (S.D. Tex. Apr. 20, 2026); *Bekboev v. Vergara,* 2026 WL 1011244, at *1 (S.D. Miss. Apr. 14, 2026); *Mlaih v. Noem*, 2026 WL 787536, at *4 (N.D. Tex. Mar. 19, 2026).

[5] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited May 29, 2026).

above—overlap but are distinct. Even though Petitioner is detained under Section 1225 and subject to mandatory detention by statute, his statutory and regulatory statuses do not foreclose his procedural due process claim.[6]

Next, courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted).

**A. Liberty Interest**

"No person shall . . . be deprived of . . . liberty . . . without due process of law[.]" U.S. CONST. AMEND. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*. at 690.

In *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972), the Supreme Court held that the requirements of procedural due process applied to parole revocations. The

---

[6] *See Marceau v. Noem*, 2026 WL 368953, at *1 (W.D. Tex. Feb. 9, 2026) ("Marceau's constitutional interest in her liberty exists above and apart from the Immigration and Nationality Act and attendant regulations.") (citing *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025)).

Court first noted that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.* at 482. Buttressing the parolee's interest in liberty is the society's interest "in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole" and its interest "in treating the parolee with basic fairness." *Id.* at 484.

The Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Id.* at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.*

Here, Petitioner's release was similar to the parole described in *Morrissey*. [doc. # 1-2]. His release, for example, allowed him—with the Government's explicit

permission—the freedom to live, associate, and establish ties in the United States. Thus, Petitioner had a protected liberty interest in his release.[7]

### B. Procedures Attendant Upon Petitioner's Deprivation

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). "The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation marks omitted)). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). "'[T]he root

---

[7] *See, e.g., O.F.C. v. Almodovar*, 2026 WL 74262, at *7 (S.D.N.Y. Jan. 9, 2026) ("Both immigration parolees and those released on immigration bond are free to live their lives in this country and to form the . . . enduring attachments of normal life. . . . While released on bond, Petitioner was able to resume his life with his U.S.-citizen wife and his young U.S.-citizen children (one of whom was born while Petitioner was released). . . . The Court has little difficulty concluding that if the Government wishes to strip Petitioner of that liberty and these attachments, it must do so in a manner consistent with due process.") (internal quotation marks, quoted source, and record citation omitted).

13

requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'"    *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . . ").

Here, even assuming Petitioner did not receive adequate process before his re-detention, he does not plead a violation of his right to procedural due process because he only seeks a bond hearing.  Petitioner does not argue that he was denied notice and an opportunity to be heard, which are both key components of due process. *Loudermill*, 470 U.S. at 546 ("The essential requirements of due process . . . are notice and an opportunity to respond.").

From what the undersigned can glean, Petitioner appears to argue that the potential error in failing to provide a bond hearing is detaining an individual who is not a flight risk or a danger to society.  However, as explained above Respondents are statutorily required to detain him under 8 U.S.C. § 1225.  Thus, even if a neutral decisionmaker determined that he was not a flight risk or a danger, Respondents would still detain him.

In *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003), the statute at issue required all sex offenders to register so that their information could be

published. The respondent, a convicted sex offender, argued that the law violated his procedural due process rights by requiring him to register without a hearing as to whether he was "currently dangerous." *Id.* at 6. Rejecting the argument, the Court opined, "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant *under the statutory scheme.*" *Id.* at 8 (emphasis added). Whether the respondent was not dangerous was "of no consequence" under the statute because it required registration of *all* convicted sex offenders. *Id.* at 7.

Here, whether Petitioner is a risk of flight or danger is largely irrelevant to whether the Government must—under relevant statutory and regulatory schemes—detain him and remove him.[8] Relevant issues, for example, include his identity, citizenship, whether he was ever admitted or paroled, when he entered this country, and whether he is entitled to protection from removal. The Government has provided, and is providing, process after detaining him in the form of a Notice to

---

[8] To be sure, noncitizens detained under 8 U.S.C. § 1225(b) *may* be released on parole for "urgent humanitarian reasons or significant public benefit," if they "present neither a security risk nor a risk of absconding." *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b). Thus, a determination that Petitioner is neither a flight risk nor a danger is not completely irrelevant. Here, however, Petitioner does not contend that he is entitled to release for urgent humanitarian reasons or for significant public benefit. And even if he did, he had and has the opportunity to present such a contention in his removal proceedings. *If* the Secretary of Homeland Security agreed, *then* Petitioner could attempt to demonstrate that he is neither a security risk nor a risk of absconding.

Appear, the ability to respond to the Government's motions, the opportunity to be heard in a hearing or via motion(s), the opportunity to present evidence, and a potential appeal. He is receiving opportunities to be heard on relevant issues such as his identity, whether he is "an alien present in the United States who has not been admitted or paroled,"[9] the country of which he is a citizen, the country or countries which might accept him, when he entered the country, and whether he is entitled to asylum or other protection. *See Clavijo v. Thompson, et al.*, 2026 WL 923310, at *3 (S.D. Tex. Mar. 26, 2026) ("8 USC § 1225(b)(2)(A), *mandates* detention of those falling within the definition of 'applicants for admission' without regard to any individualized custody determination concerning dangerousness or flight risk. And the Fifth Circuit in *Buenrostro-Mendez* has now determined that such detention lawfully applies to 'applicants for admission' like Petitioner. A hearing as to dangerousness or flight risk is thus irrelevant to the *lawfulness* of his detention under the statute.").

Accordingly, the Government has not violated Petitioner's right to procedural due process. The Court should dismiss this claim.

---

[9] [doc. # 7-2].

16

## IV. Special Immigrant Juvenile Status

Petitioner suggestively claims that his deferred action status prevents him from being removed while he awaits the availability of a visa to adjust status to a permanent resident.  [doc. # 8, p. 3].

In *Guerra Leon v. Noem*, No. 3:25-CV-01495 SEC P, 2025 WL 4113562, at *1 (W.D. La. Oct. 30, 2025) (internal footnotes omitted), District Judge Terry A. Doughty opined:

> Petitioner is likely to succeed on the merits of his habeas claim due to his deferred action status which remains in effect until December 9, 2026.  Petitioner argues that his valid grant of deferred action precludes his removal.  Respondents argue that deferred action does not provide lawful status and ICE is still within its statutory authority to execute final orders of removal regardless of whether the term of deferred action has expired.
>
> The Respondents fail to cite any authority that allow the removal of Petitioner when deferred action status is still in effect. Instead, they focus on a case like *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 433 (3d Cir. 2023), which focuses solely on the SIJS given to Cortez-Amador who then was sentenced to prison for sexually assaulting a minor.  The *Coretez-Amador* court held that SIJS is not an exemption from removal as a noncitizen' SIJS status did not prevent him from being removed due to his criminal history.  *Id.* at 431.
>
> Here however, the SIJS status is not what prevents the removability of the Petitioner. The operative factor precluding removal is his deferred action that remains in effect until December 9, 2026. USCIS's most recent policy, despite other changes, states that "aliens with current deferred action based on their SIJ classification will generally retain this deferred action, as well as retain their current employment authorization provided based on this deferred action, until current validity periods expire." USCIS, *Policy Alert PA-2025-07* (June 6, 2025),

17

https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20250606-SIJDeferredAction.pdf.; *Primero v. Mattivelo*, No. 25-cv-11442, 2025 WL 1899115, at *5 (D. Mass. July 9, 2025). In *Primero*, the petitioner was brought to the United States by his father as a minor in 2018. *Id.* at *2. He was arrested alongside his father and a final order of removal was issued *in abstentia* in 2021, but then in September of 2022, he was granted deferred action status that was valid for four years, unless terminated earlier by USCIS. *Id.* The *Primero* court determined that petitioner's valid grant of deferred action precluded his removal. *Id.* at *4 ("Respondents do not suggest that ICE routinely removes individuals with active grants of deferred action from the United States").

This case has the same factual scenario as *Primero*. Just like in *Primero*, here Petitioner has a valid grant of deferred action status which has not been terminated early by USCIS and remains effective until December 9, 2026. Petitioner may still be subject to removal in the future if his deferred action status is terminated before its expiration or if it expires and is not renewed. Respondents, however, have not terminated or sought to terminate Petitioner's deferred action status. This makes Petitioner non-removable while his deferred action status remains in effect.

. . . .

This Court holds that without terminating Petitioner's deferred action status, Petitioner cannot be removed.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Motion for Temporary Restraining Order and Preliminary Injunction [Doc. No. 4] is **GRANTED**. Respondents are to release Petitioner from custody immediately.

*See also Benitez-Umanzor v. Jackson Par. Corr. Ctr.*, No. CV 26-0940, 2026 WL 948795, at *2 (W.D. La. Apr. 8, 2026) (Van Hook, J.) ("Benetiz-Umanzor is likely to succeed on the merits of his habeas claim because a noncitizen with deferred

18

action status has a liberty interest protected under the Due Process Clause.  Other district courts that have considered this issue have overwhelmingly found the same.") (listing cases).

Here, however, Petitioner does not have deferred action status.  On January 5, 2026, DHS notified Petitioner that it terminated his "period of deferred action . . . ." [doc. # 7-4].  Accordingly, the Court should deny Petitioner's claim.

## Recommendation

For reasons above, **IT IS RECOMMENDED** that Petitioner Bryan Jose Cortez Figueroa's petition be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the**

**District Court, except upon grounds of plain error.**  *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Lafayette, Louisiana, this 4th day of June, 2026.

_____
Carol B. Whitehurst
United States Magistrate Judge